UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

    FPSDA I, LLC. et, al.,                    Case No: 810-75439-478

                            Debtor.                  Chapter 11
--------------------------------------------------------X

**OBJECTION TO THE RETENTION OF RUSKIN MOSCOU
FALTISCHEK, P.C. AS ATTORNEYS FOR THE DEBTORS**

TO:    THE HONORABLE DOROTHY T. EISENBERG,
         UNITED STATES BANKRUPTCY JUDGE:

        Tracy Hope Davis, the United States Trustee for Region 2 ("United States Trustee") in furtherance of her duties and responsibilities set forth in 28 U.S.C. §586(a)(3) and (5) does hereby file this objection to the proposed retention of Ruskin Moscou Faltischek, P.C. ("RMF"), as counsel for the above referenced procedurally consolidated debtors.

**PRELIMINARY STATEMENT**

        FPSDA I, LLC and sixteen related debtors filed for protection under chapter 11 of the Bankruptcy Code. Despite its current representation of Sovereign Bank ("Sovereign"), a secured creditor in a number of the debtors' proceedings, RMF seeks retention as debtors' counsel (hereinafter defined as "Counsel") under 11 U.S.C. §327(a). RMF proposes that the retention of the law firm of Lazer Aptheker Rosella & Yedid, P.C. ("Lazer"), as conflicts counsel to handle all matters relating to Sovereign in these proceedings, resolves the conflict issue. But, a subsequent conflict check reveals that RMF also represents DB Real Estate Assets I LLC ("DB

1

Realty"), an indirect subsidiary of Dunkin' Brands[1] and a landlord of four (4) of the debtors' retail locations. Upon information and belief, the debtors' alleged default over the various franchise agreements of Dunkin' Donuts Franchising, Baskin-Robbins Franchising LLC, Dunkin' Donuts Franchised Restaurants LLC and Baskin-Robbins Franchised Shops LLC (collectively "Franchisors") precipitated these bankruptcy filings.

      The United States Trustee submits that the resolution of issues with these major creditors is the "lynch-pin of the case." The intricate work involved in resolving these disputes is the core function and responsibility of debtors' counsel and cannot be delegated to conflicts counsel. Moreover, the actual conflict presented by RMF's continued attorney-client relationship with these creditors disqualifies RMF from representing the debtors in these proceedings. Allowing Lazer to be retained as conflicts counsel would not circumvent RMF's burden to satisfy the disinterestedness requirements under 11 U.S.C. §327(a). Therefore, the United States Trustee objects to the proposed retention of RMF as debtors' counsel.

## BACKGROUND

1.     On July 13, 2010, FPSDA I, LLC. and sixteen (16) related entities[2] filed their respective voluntary bankruptcy petitions under chapter 11 of the Bankruptcy Code. (ECF

---

[1] Dunkin' Brands is the parent company of Dunkin' Donuts Franchising LLC, Dunkin' Donuts Franchised Restaurants LLC, Baskin-Robbins Franchising LLC, Baskin-Robbins Franchised shops LLC and DB Real Estate Assets I LLC.

[2] The related cases are: Commack Road Donuts, LLC., 810-75440;FPSDA II, LLC, 810-75441; Highbridge Donuts, LLC, 810-75442; Metro Shops, LLC, 810-75443; Middle Country Road Donuts, LLC, 810-75444; Five points Development Partners, LLC, 810-75445; Mountain Road Donuts, LLC, 810-75446; Benfield Donuts, LLC, 810-75447; Upper Marlboro, LLC, 810-75448; CDDC Holding Company, LLC, 810-75449; Miller Place Donuts, LLC, 810-75450; CDDC Acquisition Company, LLC, 810-75451; 1333 Donuts, LLC, 810-75452; D3C, LLC, 810-75453; Kingdom Donuts, LLC, 810-75454; Blue Point Ventures, LLC, 810-75463.

Docket Entry No. 1 of all sixteen bankruptcy proceedings)

    2.    On July 14, 2010, the seventeenth related entity, Blue Point Ventures LLC filed its voluntary chapter 11 petition. (ECF Docket Entry No. 1 in Blue Point Ventures LLC)

    3.    By order dated July 21, 2010, the Court approved the procedural consolidation of all seventeen cases for noticing purposes, under the caption of FPSDA I, LLC, *et. al*, 810- 75439 (collectively the "Debtors"). (ECF Docket Entry No. 15)

    4.    On September 20, 2010, the United States Trustee appointed a three-member official committee of unsecured creditors ("Committee"). (ECF Docket Entry No. 70)

    5.    The Debtors own and operate seven Dunkin' Donuts retail stores in Suffolk County, New York, and six Dunkin' Donuts retail stores in Maryland.

    6.    Upon information and belief, the Debtors' bankruptcy filing was precipitated by the Debtors' inability to make certain royalty payments to Dunkin' Brands. In April 2010, the Debtors began receiving default notices from the Franchisors threatening the termination of the various franchise agreements. Upon learning of that Dunkin' Brands had transmitted termination notices, the Debtors sought the protection of the Court.

    7.    According to the Debtors' application in support of an order authorizing the use of cash collateral dated July 21, 2010 ("Cash Collateral Motion"), two of the Debtors, 1333 Donuts, LLC ("1333") and CDDC Acquisition Company LLC ("CDDC") (collectively "Sovereign Borrowers"), owe Sovereign Bank ("Sovereign") approximately $862,446 as of July 13, 2010 ("Sovereign Obligation"). The Sovereign Obligation was guaranteed by one of the Debtors,

CDDC Holding Company and a number of the individual shareholders. (ECF Docket Entry No. 17)

8. Prior to the filing, Sovereign had commenced an action in Supreme Court of the State of New York, County of Suffolk ("Sovereign Action") styled as: *Sovereign Bank v. Blue 9 Capital, LLC; Blue Point Ventures, LLC; Five Points Partners, LLC; Scarnic, Inc.; Nicagella Corp.; First Pad, Inc.; CDDC Acquisition company, LLC; 1333 Donuts, LLC; Coram Kitchen, LLC; CEEC Holding Company, LLC; Michael Nicoletti; Vera Nicoletti; and Howard Curd* ("Sovereign Defendants"). The Debtors retained Lazer to represent them in the Sovereign Action.

9. In addition, according to the Cash Collateral Motion, six of the Debtor entities-- D3C, LLC ("D3C"), Mountain Road Donuts, LLC ("Mountain"), Benfield Donuts, LLC ("Benfield"), Highbridge Donuts, LLC ("Highbridge"), Upper Marlboro, LL("Marlboro") and Metro Shops, LLC ("Metro") (collectively "CIT Borrowers") entered into certain loan and security agreements with CIT. As of July 13, 2010, the CIT Borrowers owed CIT approximately $3,159,280 ("CIT Obligation"). The CIT Obligation was guaranteed by one of the Debtors, Blue Point Ventures, LLC. In addition, a number of the individual shareholders and other non-filing entities also guaranteed the CIT Obligation. (ECF Docket Entry No. 17)

10. On September 24, 2010, the Dunkin' Brands filed an objection ("Dunkin's Objection") to the Cash Collateral Motion (ECF Docket Entry No. 73). The Dunkin' Objection asserted that eight of the Debtors had entered into a pre-petition combination Dunkin' Donuts

and Baskin-Robins franchise agreements[3] and four of the Debtors had entered into a pre-petition Dunkin' Donuts franchise agreements with the Franchisors[4]. Four of the Debtors also entered into commercial lease agreements[5] with DB Realty.

11.     On September 27, 2010, the Court entered an order dismissing the bankruptcy proceeding of 1333 Donuts, LLC, with case number 810-75452. (ECF Docket Entry No. 74).

12.     On September 28, 2010, the Debtors filed an application seeking Court approval for the proposed retention of RMF as counsel for the Debtors ("Retention Application"). (ECF Docket Entry No. 75)

*RMF's business relationship with creditors of these estates*

*A.     Disclosure made on July 22, 2010 (attached to the Retention Application ECF Docket Entry No. 75)*

*Sovereign Bank, Wachovia Bank and Francis X. Coleman, Jr.*

13.     In support of RMF's retention, Harold S. Berzow, Esq. ("Berzow"), a member of RMF, submitted an Affidavit of Disinterestedness dated July 22, 2010 ("Affidavit"). The Affidavit discloses the following: RMF a) has an ongoing relationship with Sovereign and Wachovia Bank representing those entities on several pending matters unrelated to the Debtors;

---

[3] The Debtors who are a party to these franchise agreements are: 1) CDDC Acquisition company, LLC, 2) Middle Country Road Donuts, LLC, 3) Miller Place Donuts, LLC, 4) Mountain Road Donuts, LLC, 5) Benfield Donuts, LLC, 6) Kingdom Donuts, LLC, 7) FPSDA I, LLC and 8) Highbridge Donuts, LLC.

[4] The Debtors who are a party to the Dunkin' Donuts franchise agreements are: 1) Commack Road Donuts, LLC, 2) D3C, LLC, 3) Metro Shops, LLC and 4) FPSDA II, LLC.

[5] DB Realty is the landlord in the following Debtors' cases:  Mountain Road Donuts, LLC, Benfield Donuts, LLC, CDDC Acuqisition Company, LLC and Middle Country Road Donuts, LLC.

b) formerly represented a minor granddaughter as the Guardian Ad Litem of the deceased's estate of Francis X. Coleman, Jr.[6], a holder of certain unsecured claims; and c) formerly represented CIT in matters unrelated to the Debtors  (Paragraph 5 on page 2 of the Affidavit).

14.     Recognizing the appearance of an actual conflict with Sovereign (Paragraph 5 on page 2 of the Affidavit), RMF proposed that Lazer to be retained as special conflicts counsel to " . . . represent the Debtors in all matters relating to Sovereign Bank . . ." (Paragraph 7 on page 3 of the Affidavit)

15.     The Affidavit further provides that "[I]nsofar as I have been able to ascertain, other than as disclosed herein, neither I, RMF, nor any member counsel, associate or employee thereof represents any interest adverse to that of the Debtors, and I believe RMF to be a "disinterested person" within the meaning of §104(14) of the Bankruptcy Code." (Paragraph 9 on page 3 of the Affidavit).

### B.     *Further disclosure made on September 24, 2010 (attached to the Retention Application ECF Docket Entry No. 75)*

*DB Realty and Dunkin' Brands*

16.     On September 28, 2010, Berzow filed a supplemental affidavit ("Supplemental Affidavit") dated September 24, 2010, with the Retention Application.  Therein, Berzow discloses that RMF is currently representing Sovereign in five (5) unrelated matters, which representation involves the negotiation and the drafting of loan documents.  The Supplemental

---

[6]Pursuant to Schedule "B" filed by CDDC Holding Company, LLC, Francis X. Coleman, Jr, holds an unsecured claim in the sum of $1,158,972.22 against the this Debtor.  In addition, Francis Coleman III is listed as an unsecured creditor in Blue Point Ventures, LLC in the amount of $462,062.50.

Affidavit also discloses that RMF has represented Sovereign in connection with the wind down and liquidation of various defaulted loans (Paragraph 7 on page 3 of the Supplemental Affidavit), and has obtained a conflict waiver from both Sovereign and DB Realty (Paragraph 35 on page 10 of the Supplemental Affidavit).

17. The Supplemental Affidavit further avers that RMF has determined that it was previously engaged in a condemnation proceeding where DB Realty was the client (Paragraph 9 on page 3 of the Supplemental Affidavit), and that RMF is currently representing DB Realty in two (2) condemnation proceedings that are unrelated to the within bankruptcy case (Paragraph 27 on page 8 of the Supplemental Affidavit). DB Realty is the landlord of four (4) of the Debtors' retail locations (Paragraph 9 on page 3 of the Supplemental Affidavit).

18. The Supplemental Affidavit asserts that Sovereign and DB Realty combined represent less that 1% of the RMF's revenue (Paragraph 41 on page 11 of the Supplemental Affidavit).

## OBJECTION

**I. A Conflict of Interest Exists in These Cases Which Disqualifies RMF From Representing the Debtors.**

*A.    General Standard*

19. Section 327(a) of the Bankruptcy Code permits a debtor in possession to employ professionals of its choice to represent the estate during a bankruptcy proceeding with court approval. *In re Project Orange Associates, LLC*; 431 B.R. 363, 369 (Bankr. S.D.N.Y. 2010)*; citing In re Worldcom, Inc.*, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 1004). 11 U.S.C.§327(a) states, in part, that:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Under Section 327(a), the prospective professional must be a disinterested party and must not have any interest adverse to the debtor's estate. The Bankruptcy Code further defines the term of "disinterested person " under 11 U.S.C. §101(14C) as a person that –

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason

The disinterestedness standard under Section 327(a) is a safeguard to assure 'that the professionals' service presents no conflict of interest." *In re Vouzianas*, 259 F.3d 103, 107 (2nd Cir. 2001); *see also In re Vebeliunas*, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999) (even the appearance of a conflict is to be avoided).

20.     Although the term "adverse interest" is not defined in the Bankruptcy Code, the Second Circuit has held that:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Enron* 2002 WL 32034346, *8 (Bankr. S.D.N.Y. May 23, 2002) citing *In re Caldor, Inc.,* 193 B.R. 165, 171 (*Bankr. S.D.N.Y. 1996) (quoting *Bank Brussels Lambert v. Coan (In re AroChem Corp.*), 176 F.3d 610, 623 (2d Cir. 1999)).  The Court in *In re Enron* 2002 WL 32034346*8 further states, "[S]tated another way, if it is plausible that the representation of another interest may cause the professional to act any differently than they would without that

other representation, then that professional would have a conflict and an interest adverse to the estate warranting disqualification." *See In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994)." Adverse interests may include "economic and personal interests of an attorney." *See In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002). "Generally stated, the adverse interest test is objective and excludes "any interests of relationship, however, slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules" *In re Project Orange Associates, LLC*, 431 at 370, *citiing In re Granite Partners*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998). When the retention of professionals is approved under Section 327, the Court must assure that the professionals must be able to fulfill their fiduciary responsibilities to the estate. *See In re Leslie Fay Cos.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994). Therefore, "even where section 327(c)[7] is applicable, if a court determines that there is an actual conflict of interest following an objection from the U.S. Trustee or a creditor the court must disapprove the employment." *In re Project Orange Associates, LLC*, 431 at 371.

*B.     Representation of Sovereign Bank Renders RMF Not Disinterested and Precludes it From Retention under §327(a)*

21.     RMF's representation of Sovereign in unrelated matters renders RMF unable to represent the Debtors in these proceedings.

---

[7] 11 U.S.C. 327(c) states:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

22.     Pursuant to the Affidavit and the Supplemental Affidavit, RMF had an ongoing attorney-client relationship with Sovereign prior to its engagement as Debtors' counsel in this bankruptcy proceeding.  According to the Supplemental Affidavit, RMF currently represents Sovereign in approximate five (5) unrelated matters (Paragraph 7 on page 3 of the Supplemental Affidavit).  Pre-petition, Sovereign had commenced the Sovereign Action, which Lazer was defending on behalf of the Sovereign Defendants.

23.     The United States Trustee submits that until the Sovereign Action is resolved, the Debtors and Sovereign are still directly adverse.  While RMF may allege Sovereign and DB Realty combined revenue represents approximately 1% of RMF's revenue, the enforcement and performance under the existing security agreement among the parties will continue to place the Debtors and Sovereign directly at odds and could well give rise to further litigation.  To authorize professionals' retention under §327, the Court must assure that the professionals are able to fulfill their fiduciary responsibility to the estate.  *Leslie Fay, supra*, 175 B.R. at 532.  It is submitted that there is an actual conflict and RMF has a disabling conflict of interest with Sovereign which renders RMF disqualified under §327 from representing the Debtors in this bankruptcy proceeding.

C.     *Representation of Dunkin's subsidiaries Renders RMF Not Disinterested and Precludes it From Retention under §327(a)*

24.     In addition to the actual conflict arising out of RMF's ongoing legal representation of Sovereign, RMF also maintains an ongoing attorney-client relationship with a subsidiary of the Dunkin' Brands, DB Realty, which renders RMF not disinterested under the definition of §101(14).

25. In the Supplemental Affidavit, RMF discloses that RMF represented and continues to represent DB Realty in two (2) condemnation proceedings. Simultaneously, DB Realty is the landlord of four (4) of the Debtors' business locations and the party with whom the Debtors must renegotiate the lease agreements. It is submitted that RMF cannot effectively represent the Debtors when RMF must negotiate with its other client.

26. RMF's conflict becomes even more apparent when one considers that it was the proposed termination of Dunkin's franchising agreements that caused the Debtors to seek a bankruptcy protection. The resolution of the franchise and lease agreements are integral to the Debtors' reorganization. Moreover, the problem is not merely theoretical. On September 24, 2010, the Dunkin' Brands filed the Dunkin's Objection on the grounds that the Debtors failed to provide any adequate assurance payments and failed to resolve the lease payments to the Dunkin' Brands. Dunkin' Brands further stated in the Dunkin's Objection that it would not entertain any discussions in the reduction of the Debtors' fees and rent. As a result, Dunkin' Brands did not believe that there would be any likelihood for the Debtors to successfully assume either the franchise or the leasehold agreements. (ECF Docket Entry No. 73)

27. Although there appears to be no pending lawsuits between the Debtors and any subsidiaries of the Dunkin' Brand in these cases, "disabling adverse interests may exist where the professional to be retained also represents creditors of the debtor." *In re Project Orange Associates, LLC*, 431 B.R. at 374; *citing In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 865-866 (Bankr. N.D. Ill 1992).

28. The Debtors' resolution of its relationship with Dunkin' Brands and its subsidiaries are the core to the Debtors' successful reorganization. Because of RMF's continued

relationship with DB Realty and its indirect relationship with Dunkin' Brands, it is highly inappropriate for RMF, on behalf of the Debtors, to have any involvement with the negotiation of both the franchise and lease agreements with Dunkin' Brands.

29.     Even if both the Debtors and Dunkin' Brands' consent to a conflict waiver, RMF must still satisfy the statutory requirements of section 327(a) to be retained as general counsel because in some instances waiver of conflicts may not trump the mandatory provisions of professional conduct under section 327(a).  *See In re Granite Partners, L.P.*, 219 B.R. at 34 (Finding that despite a conflict waiver, a proposed professional must still comply with the disinterestedness requirement under §327); *In re Perry,* 194 B.R. 875, 800 (E.D. Cal. 1996).

30.     In the present case, RMF argues that relationship between both Sovereign and the Dunkin' Brands is minor and it would not affect its representation of the Debtors in this proceeding.  However, the United States Trustee submits that the conflicts herein are sufficient to satisfy the standard enunciated by the Court in *Project Orange*, which found a disqualifying conflict even if that conflict only "faintly colored the independence and impartial attitude" required of counsel.  See *In re Project Orange Associates, LLC*, 431 at 370.  In addition, the Court cannot be assured that RMF is capable of fulfilling its fiduciary responsibilities to the estate because of either its current and/or future "economic or personal interests" with the major creditors of this estate.

31.     As will be shown herein, RMF's proposal to use conflicts counsel fails to remedy their disqualification.

*D.     The Employment of Conflicts Counsel is Inappropriate in This Case*

33.	Although the Debtors have proposed to retain Lazer as conflicts counsel to handle some of the matters in these cases, such retention does not automatically insulate RMF's disqualification due to the existence of its adverse interest to the Debtors' estates. *See Git-n-Go, Inc*., 321 B.R. 54, 61-62 (Bankr. N.D. Okla. 2004). In some instances, the retention of conflict counsel to handle matters where general bankruptcy counsel has an adverse interest solves the issues presented under §327(a). However, RMF cited no authorities supporting its position that using conflicts counsel remedies RMF's multiple conflicts of interest arising from its representation of a number of major creditors who are central to the Debtors' reorganization.

33.	In the present case, not only does an actual conflict arise because of both the Sovereign Action and RMF's continued relationship with Sovereign, but RMF is also adverse to the Debtors' estates because of its continued representation of DB Realty. As stated above, both Dunkin' Brands and Sovereign are central to the Debtors' successful reorganization. "Courts have determined that where proposed counsel is conflicted from representing a debtor with regards to matters central to the bankruptcy, even the presence of conflicts counsel does not make the retention appropriate." *In re Project Orange Associates, LLC*, 431 at 376; *In re Amdura Corp*, 121 B.R. 862 (Bankr. D. Colo.1990). In short, when the resolution of issues with a creditor is the lynch-pin of the case, a conflict cannot be remedied merely through the use of conflicts counsel.

34.	It is further anticipated that a significant amount of time and effort must be devoted to address the disputes with both Sovereign, DB Realty and Dunkin' Brands. As a result, the services which RMF proposes to be performed by Lazer as conflicts counsel are

13

services normally performed by general counsel under §327(a) and not the more limited "special purpose" contemplated by §327(e).

35. The United States Trustee also has serious concerns about the duplication of work in these cases if the Debtors are allowed to retain both RMF and Lazer. First, RMF has agreed not to be involved with any matters in connection with Sovereign in these proceedings. Because of the ongoing disputes with DB Realty and the Franchisors regarding both the franchise and the lease agreements, it will also be inappropriate for RMF to represent the Debtors in the Dunkin' Brands disputes. Because of the predominance of the Sovereign and Dunkin' Brands issues, Lazer will be engaged to perform general counsel's duties. It appears that both firms have to be well-versed on all matters related to the bankruptcy cases and be present at every hearing. Therefore, aside from the fact that the retention of Lazer as conflicts counsel does not resolve the existing conflicts that RMF has, the anticipated legal fees charged by both RMF and Lazer may substantially increase the administrative costs, to the detriment of the Debtors' reorganization. According, the retention of Lazer as special counsel under §327(e) to perform duties of a general counsel under §327(a) should be denied.

## Conclusion

36. The United States Trustee shares the same view as RMF that "Courts determine whether an adverse interest exists on a case-by-case basis, examining the specific facts in a case. *In re AroChem Corp.*, 176 F3d. at 623" (Paragraph 23 on page 6 of the Retention Application). In the case at bar, RMF discloses that its gross billing of Sovereign and DB Realty combined comprise less than one (1%) percent of RMF's revenue which may be an immaterial amount.

However, RMF acknowledges that conflict exists because it continues to represent Sovereign. As a result, all matters relating to Sovereign would be deferred to Lazer to handle during the pendency of this bankruptcy case. The same, if its only greater, conflict arises when RMF continues its representation of DB Realty in the pending condemnation proceedings. DB Realty and the Franchisors are at odd with the Debtors over the franchise and leasehold agreements. Therefore, when the Court reviews the standard set forth in §327(a) regarding retention of general bankruptcy counsel, in the present case RMF is not a disinterested party under the definition of 11 U.S.C. §101(14) and holds an interest adverse to the Debtors' estate as a result of its multiple representation of creditors. The proposed retention of Lazer as conflicts counsel will not and cannot remedy the conflict issue. Furthermore, the proposed retention of Lazer as conflicts counsel certainly will not overcome the statutory requirements set forth in §327(a) for the retention of general bankruptcy counsel. Accordingly, RMF's retention must be denied because its ongoing representation of the major creditors in these cases disqualifies RMF under 11 U.S.C. §327(a).

WHEREFORE, the United States Trustee requests that the Court sustain her objections, deny the retention application and grant other relief as the Court deems appropriate.

Dated: Central Islip, New York
October 8, 2010

                TRACY HOPE DAVIS
                United States Trustee
                Region 2

                _/S/ Stan Y. Yang_____
                Stan Y. Yang
                Trial Attorney
                560 Federal Plaza
                Central Islip, New York 11722
                (631) 715-7800

.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

    FPSDA I, LLC. et, al.,                    Case No: 810-75439-478

                              Debtor.                  Chapter 11
-------------------------------------------------------X

STATE OF NEW YORK)
                              :ss
COUNTY OF SUFFOLK )

Deborah Scheff, being duly sworn, deposes and says:

        1.  I am not a party to this action, am over the age of 18 years and am employed at the Office of the United States Trustee for the Eastern District of New York, Long Island Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722.

        On October 8, 2010, I served a courtesy copy of **attached objection** in the above referenced chapter 11 case, by depositing same in a sealed envelope, with postage pre-paid thereon, in an official depository of the United States Postal Service within the State of New York, addressed to the last known address of the addresses listed on the attached list.

                                                        ***/S/ Deborah Scheff***
                                                        Deborah Scheff

Sworn to before me on the
8th day of October, 2010

***/S/ Stan Y. Yang***
*Notary Public*
*State of New York*
*No.  31-4977344*
*Qualified in Nassau County*
*Commission Expires February 4, 2011*

**Mailing List**

Ruskin Moscou Faltischek, P.C.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556-1425

The Law Offices of Avrum J. Rosen
38 New Street
Huntington, New York 11743

O'Rourke & Degen, PLLC
225 Broadway, Suite 715
New York, New York 10007

HAHN & HESSEN LLP
488 Madison Avenue
New York, NY 10022