UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

FPSDA I, LLC, *et. al.*,

                Debtors.

--------------------------------------------------------x

Chapter 11

Case No.: 8-10-75439-478

(Jointly Administered)

# MEMORANDUM DECISION AND ORDER

*Appearances:*

Ruskin Moscou Faltishckek PC
*Attorneys for the Debtors*
By: Michael S. Amato, Esq.
1425 RXR Plaza
Uniondale, New York 11556

O'Rourke & Degen, PLLC
*Attorneys for Dunkin' Donuts Franchising*
*LLC, Dunkin' Donuts Franchised*
*Restaurants LLC, Baskin-Robbins*
*Franchising  LLC, Baskin-Robbins*
*Franchised Shops LLC and DB Real Estate*
*Assets I LLC*
By: Ronald D. Degen, Esq.
225 Broadway, Suite 715
New York, New York 10007

Hahn & Hessen LLP
*Attorneys for The CIT Group/Equipment*
*Financing, Inc.*
By: Rosanne Thomas Matzat, Esq.
488 Madison Avenue
New York, New York 10022

Office of the United States Trustee
By: Stan Yang, Esq.
560 Federal Plaza
Central Islip, New York 11722

The Law Offices of Avrum J. Rosen, PLLC
*Attorneys for the Official Committee of*
*Unsecured Creditors*
By: Fred Kantrow, Esq.
38 New Street
Huntington, New York 11743

Hinman, Howard & Kattell, LLP
*Attorneys for Bank of the West and*
*First Franchise Capital*
By: Harvey D. Mervis, Esq.
700 Security Mutual Building
80 Exchange Street
P.O. Box 5250
Binghamton, New York 13902-5250

Windels Marx Lane & Mittendorf, LLP
*Attorneys for Sovereign Bank*
By: Leslie S. Barr, Esq.
156 West 56th Street
New York, New York 10019

The Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the motion by FPSDA I, LLC, Commack Road Donuts, LLC, FPSDA II, LLC, Highbridge Donuts, LLC, Metro Shops, LLC, Middle Country Road Donuts, LLC, Five Points Development Partners, LLC, Mountain Road Donuts, LLC, Benfield Donuts, LLC, Upper Marlboro, LLC, CDDC Holding Company, Miller Place Donuts, LLC, CDDC Acquisition Company, LLC, D3C, LLC, Kingdom Donuts, LLC, and Blue Point Ventures, LLC (collectively, the "Debtors") for the entry of an order (I) determining that certain of the Debtors' non-residential real property leases need not be assumed or rejected pursuant to 11 U.S.C. § 365(d)(4) at this time, or (II) in the alternative, allowing the Debtors to assume the non-residential real property leases at issue under 11 U.S.C. § 365(d)(4) without having to cure any monetary defaults existing under corresponding franchise agreements (the "Motion"). This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) and 11 U.S.C. §§ 105(a) and 365(d). The following constitutes the Court's findings of fact and conclusions of law as mandated by Bankruptcy Rule 7052 of the Federal Rules of Bankruptcy Procedure.

<u>FACTS</u>

The Debtors operate several quick serve restaurant franchises that produce and sell beverages, donuts, baked goods and other food products, with seven retail stores located in New York and six retail stores located in Maryland. The Debtors have been operating their businesses in Chapter 11 as debtors in possession since or about July 13, 2010. The bankruptcy cases are jointly administered but have not been substantively consolidated.

The Debtors' most significant assets consist of the separate franchise agreements entered into by twelve of the Debtors with Dunkin' Donuts Franchising LLC, Dunkin' Donuts

1

Incorporated, Dunkin' Donuts Franchised Restaurants LLC, Baskin-Robbins Franchising LLC

and/or Baskin-Robbins Franchised Shops LLC (collectively, "Dunkin' Franchisors") as follows:

| Debtor | Franchise Agreement Date |
|---|---|
| CDDC Acquisition, LLC | June 28, 2004 |
| Commack Road Donuts, LLC | June 28, 2004 |
| FPSDA I, LLC | June 22, 2007 |
| Kingdom Donuts | July 1, 2007 |
| FPSDA I, LLC | October 4, 2007 |
| Mountain Road Donuts, LLC | October 12, 2007 |
| Highbridge Donuts | November 9, 2007 |
| Middle Country Road Donuts, LLC | December 26, 2007 |
| Miller Place Donuts, LLC | December 26, 2007 |
| Benfield Donuts, LLC | December 26, 2007 |
| D3C, LLC | March 4, 2008 |
| Metro Shops, LLC | September 17, 2008 |

Each of the franchise agreements set forth the location of the franchise unit that is to be

operated under the respective franchise agreement in terms of the specific street address.  At the

termination of the franchise agreement, the Dunkin' Franchisors have the option to take over any

interest the franchisee has in the real property lease or any other agreement related to the

premises where the franchise unit was operating whether the landlord is affiliated with the

Dunkin' Franchisors or is a third party.  If the franchisee acquires ownership or control of the

premises, then the Dunkin' Franchisors have the option to lease the premises from the franchisee

for the remaining term of the franchise agreement should the franchisee default under the

agreement or under any lease relating to the premises.

These franchise agreements also contain cross guarantee provisions that if the franchisee

or any partner, member or shareholder of a franchisee holds or subsequently acquires an interest in any other unit franchised by the Dunkin' Franchisors, the franchisee would be jointly and severally liable to the Dunkin' Franchisors as guarantor of the obligations of the franchisee under each franchise agreement for such other unit.  Such guarantee would include the payment of all franchise fees, advertising fees, equipment payments, note payments rental and other lease payments to the Dunkin' Franchisors or any of its parent, subsidiaries and affiliates.

It is undisputed that these franchise agreements are executory contracts which require Debtors to make certain payments of franchise and advertising fees to the Dunkin' Franchisors based upon a percentage of their sales revenue.  The Debtors' bankruptcy filing was precipitated by the breakdown in negotiations between the Debtors and the Dunkin' Franchisors to restructure their obligations under the franchise agreements and the imminent threat of the Dunkin' Franchisors transmitting termination notices for the franchise agreements.

In addition to the franchise agreements, the Debtors are also tenants under various non-residential real property leases.  Four of those leases are with DB Real Estate Assets I LLC and/or Third Dunkin' Donuts Realty, Inc. (together with the Dunkin' Franchisors, "Dunkin' Brands") as the landlord.  The Debtors, Middle Country Road Donuts, LLC, Mountain Road Donuts, LLC, Benfield Donuts LLC, and CDDC Acquisition Company, LLC, each entered into a nonresidential real property lease with Dunkin' Brands ("Dunkin' Brands Leases") at the same time they entered into the related franchise agreement.  It is undisputed that the Dunkin' Brands Leases are true nonresidential real property leases.  Each of the Dunkin' Brands Leases set forth the specific franchisor and franchise agreement that permits the respective Debtor to operate on the premises.  Each of the Dunkin' Brand Leases also provides that the Debtors are only

permitted to use the premises to operate a Baskin-Robbins and/or Dunkin' Donuts unit, and in two cases they include a Togo's Eatery, at the location covered by the Dunkin' Brands Lease. Each lease is subject to the franchise agreement remaining in full force and effect. If the franchise agreement is terminated for any reason, then Dunkin' Brands have the right to terminate the lease immediately. Dunkin' Brands would not have signed a lease with a debtor had that debtor not simultaneously signed a franchise agreement with the Dunkin' Franchisors to operate a Dunkin' Donuts and/or Baskin-Robbins franchise on the leased premises. There are some prepetition rent arrears due on the Dunkin' Brands Leases but the Debtors are current with their postpetition rent obligations under these leases.

Pursuant to 11 U.S.C. § 365(d)(4), the Debtors would have 120 days from the date of the entry of the order for relief to determined whether they wanted to assume or reject the various nonresidential real property leases. The Debtors previously obtained an order from the court granting an extension of their time to assume or reject the leases for another 90 days to February 10, 2011. Prior to the February 10, 2011 deadline, the Debtors sought to obtain consent from their various landlords for a further extension of time to assume or reject the leases to April 11, 2011. All the landlords consented to a further extension with the exception of Dunkin' Brands. Accordingly, the Debtors filed this Motion prior to February 10, 2011 seeking a determination that either the Debtors need not decide whether to assume or reject the Dunkin' Brands Leases until confirmation of a plan of reorganization pursuant to 11 U.S.C. § 365(d)(2) or the Debtors should be permitted to assume the Dunkin' Brands Leases without having to cure all the existing defaults under the related franchise agreements.

Dunkin' Brands opposed the Motion but agreed to extend the Debtors' time to assume or

reject their leases to March 4, 2011 for purposes of having the Court hear oral arguments relating to the Debtors' Motion.

According to Dunkin' Brands, the Dunkin' Brands Leases and the franchise agreements constitute a single transaction or arrangement as a result of the various cross default provisions. They argue that before the Debtors can assume any of the Dunkin' Brands Leases, the Debtors would need to cure not only the defaults under those leases but also the existing defaults under the related franchise agreements. According to Dunkin' Brands, the Debtors owe at least $700,000 in prepetition and postpetition franchise and advertising fees, plus late charges, interest and costs, to the Dunkin' Franchisors under the franchise agreements associated with the Dunkin' Brands Leases. If the Debtors cannot cure such defaults, the Dunkin' Brands Leases should be deemed rejected as of March 4, 2011 as Dunkin' Brands do not consent to any further extension of time for the Debtors to assume these leases.

The Debtors point out that they operate separate and apart from one another, have their own franchise agreements and leases, their own individual employees, their own credit and security agreements with secured lenders and their own separate agreements with various trade creditors. They are not substantively consolidated and remain individual debtors in this Court. The Debtors argue that under Dunkin' Brands' argument, if the Debtors were compelled to assume the Dunkin' Brand Leases at this time before they have made a determination as to whether to assume or reject the franchise agreements, then the Debtors would be forced not only (i) to remain current on payments to Dunkin' Brands under the leases and corresponding franchise agreements in addition to payments to their secured lenders and other creditors, but also (ii) to cure all the arrears on the franchise agreements and the Dunkin' Brands Leases. If the

5

Debtors were to ultimately determine that the applicable franchise agreements must be rejected, then the subsequent breach of any assumed lease will result in substantial additional postpetition administration liabilities which would prejudice the Debtors and the creditors of the Debtors' bankruptcy estates. The Debtors argue that they should not be compelled to assume or reject the Dunkin' Brand Leases until they are ready to make a determination on each of the franchise agreements. In the alternative, the Debtors request that the Court permit the Debtors to assume the Dunkin' Brands Leases and cure only the prepetition arrears under the leases, including the non-Dunkin' Brands leases, without having to cure the arrears under the franchise agreements.

The Official Committee for the General Unsecured Creditors and the Debtors' secured lenders, Bank of the West, First Franchise Capital, Sovereign Bank, and The CIT Group ("CIT") have argued in support of the Debtor's Motion and opposed the position taken by Dunkin' Brands as they would be prejudiced by any premature assumption or rejection of the leases and implicitly the franchise agreements. The four locations at issue under the Dunkin' Brands Leases represent a significant asset by way of collateral secured in favor of these other creditors of the Debtors' bankruptcy estates and any recovery to these creditors and the unsecured creditors may depend upon any value that can be attributable to the franchise agreements and the leases.

At the hearing on the Debtors' Motion held on March 3, 2011, the Court made an interim ruling that the Debtors' time to assume or reject the Dunkin' Brands Leases could be extended, despite the lack of consent by Dunkin' Brands, to March 29, 2010 without prejudice to any further requests for extensions. This memorandum decision sets forth the Court's final ruling on the Debtors' Motion.

<u>DISCUSSION</u>

The issues before the Court are (1) whether each of the Dunkin' Brands Leases and the corresponding franchise agreements constitute an integrated arrangement whereby the respective franchise agreement and the Dunkin' Brands Lease should be treated together as a single controlling agreement between the parties; (2) whether, to the extent the franchise agreements and Dunkin' Brands Leases constitute integrated arrangements and thus, a single controlling agreement, the deadline to assume or reject the entire arrangement is determined by 11 U.S.C. § 365(d)(2) which pertains to executory contracts as argued by the Debtors and their secured lenders or 11 U.S.C. § 365(d)(4) which pertains to nonresidential real property leases as argued by Dunkin' Brands; and (3) whether the Debtors can assume the Dunkin Brands Leases without having to cure existing defaults under the corresponding franchise agreements.

I.      *Whether an integrated arrangement exists.*

It is undisputed by Debtors and Dunkin' Brands that at least for purposes of this Motion, that each of the Dunkin' Brands Leases and the corresponding franchise agreements constitute an integrated arrangement.  Each debtor that was a party to a Dunkin' Brands Lease  entered into the lease contemporaneously with a franchise agreement to operate a franchise unit at the leased premises.  Although the name of the franchisor on the franchise agreement is different from the name of the landlord under the Dunkin' Brands Lease, Dunkin' Brands have stated that the entities are affiliates or related entities.  Each Dunkin' Brands Lease and franchise agreement are "economically interrelated and interdependent".  *In re Szenda*, 406 B.R. 574, 580 (Bankr. D. Mass. 2009).  Dunkin' Brands would not have entered into a lease with the debtor unless the debtor also entered into the franchise agreement.  The only permitted use for the leased premises

is to operate a Dunkin' Donuts and/or Baskin-Robbins franchise and in some cases also a Togo's Eatery.  If a debtor defaults under a Dunkin' Brands Lease, then Dunkin' Brands have the right to terminate the corresponding franchise agreement for such leased premises.  Each Dunkin' Brands Lease cannot operate independently of the corresponding franchise agreement and thus, consideration for one agreement supported the other agreement.  Accordingly, each Dunkin' Brands Lease and the corresponding franchise agreement relating to the leased premises constituted an integrated transaction and should be treated as a single controlling agreement.

II.    *Whether a debtor may assume a nonresidential real property lease without curing defaults under a related executory contract.*

At the hearing, Debtors requested that should they be required to assume the Dunkin' Brands Leases prior to the expiration of the deadline set forth under 11 U.S.C. § 365(d)(4), that they be allowed to do so and be required to cure just the defaults under the leases without having to cure the defaults under the related franchise agreements.  Pursuant to 11 U.S.C. § 365(b), a trustee, or in this case the debtor, may not assume an executory contract or unexpired lease unless at the time of assumption of such contract or lease, the debtor:

> (A) cures, or provides adequate assurance that [debtor] will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an expired lease of real property, if it is impossible for the [debtor] to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph.

11U.S.C. §365(b)(1)(A).

While 11 U.S.C. § 365(b) does not discuss whether assumption of an unexpired lease would require the debtor to cure any defaults under a related executory contract, courts have held that where a nonresidential real property lease is part of an integrated arrangement consisting of another executory agreement a debtor cannot assume the lease obligation without also curing the defaults under the related executory agreement. *In re Szenda*, 406 B.R. at 582 (finding that the debtor's motion to assume a lease agreement must be denied unless the debtor seeks approval for the assumption of the Subway franchise agreement relating to the leased premises either by motion or a plan); *In re T& H Diner, Inc*., 108 B.R. 448, 454 (D. N.H. 1989)(finding the sale of a diner and the lease for the premises upon which the diner operated to be one indivisible transaction and that the debtor's failure to make note payments constituted a default under the lease that would preclude assumption of the lease); *In re East Hampton Sand & Gravel Co., Inc*., 25 B.R. 193, 199 (Bankr. E.D.N.Y 1982)(finding the "lease is part and parcel of one unified transaction whereby the creditor sold its concrete manufacturing business to the debtor" and that in balancing the equities that any assumption of the lease would require the debtor to make payments under the note relating to the purchase of the business).

Because each of the Dunkin' Brands Lease and the respective franchise agreement constitute one controlling agreement, the Debtors cannot assume a Dunkin' Brands Lease unless they cure not only the defaults under the Lease but also any defaults under the respective franchise agreement. In essence, should the Debtors wish to assume the Dunkin' Brands Leases, they would also need to assume the related franchise agreements and cure the defaults thereunder. This requirement is consistent with the nature of these economically integrated transactions. A debtor cannot separate parts of an integrated transaction by picking the pieces it

9

wishes to assume and which pieces it wishes to reject as such would provide the debtor with a windfall at the expense of the creditor by denying the creditor the benefit of its bargained for transaction. *In re East Hampton Sand & Gravel Co.*, Inc., 25 B.R. at 199.

*III.  Whether 11 U.S.C. § 365(d)(2) or 11 U.S.C. § 365(d)(4) applies to integrated agreements.*

Pursuant to 11 U.S.C. § 365(d)(2), a debtor has until confirmation of a plan of reorganization to decide whether to assume or reject an executory contract such as a franchise agreement.  In the case of free standing nonresidential real property leases, the time to assume or reject such leases is generally limited pursuant to 11 U.S.C. § 365(d)(4).  Under section 365(d)(4), after the initial 120 days from the entry of an order for relief plus a 90 day extension that can be granted by the court, a debtor must decide whether to assume or reject a nonresidential real property lease or such lease would be deemed rejected unless the landlord consents to a further extension of time.

Pursuant to 11 U.S.C. § 365(d):

(2) In a case under chapter 9, 11, 12 or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

*            *            *

(4) (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of –
  (i) the date that is 120 days after the date of the order for relief; or
  (ii) the date of the entry of an order confirming a plan.
 (B) (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
  (ii) If the court grants an extension under clause (i), the court may

10

> grant a subsequent extension only upon prior written consent of the
> lessor in each instance.

11 U.S.C. § 365.  Section 365(d)(4) sets forth a firm deadline as to a debtor's time to assume or

reject a nonresidential real property lease.  The deadline was originally enacted to address

problems caused by extended vacancies or partial operation by a debtor of tenant space located

in shopping centers which reduced customer traffic to other nondebtor tenants due to delays in

debtors deciding whether to assume or reject the real property leases.  *See* 130 Cong. Rec.

S8891, S8894-95 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984 U.S.

Code Cong. & Admin. News 590, 598-99.

    Where as here the assumption of the nonresidential real property lease implicitly requires

the assumption of the related executory contract because both agreements are part of a single

transaction and must be viewed as one controlling agreement, an issue arises as to when the

debtor must determine whether it wants to assume or reject the entire transaction.

    One court has noted, where a franchise agreement and a lease form an integrated business

relationship and one controlling agreement between the parties, the deadline for assumption or

rejection of nonresidential leases is not applicable.  *In re Harrison*, 117 B.R. 570, 573 (Bankr.

C.D. Cal. 1990).  In *Harrison*, Shell Oil Company sought to compel the debtor to surrender two

nonresidential real properties pursuant to 11 U.S.C. § 365(d)(4) because the debtor failed to

assume or reject the leases within the required deadline, which at the time was 60 days from the

petition date.[1]  The Harrison court noted that a petroleum products franchise presented a different

---

[1] 11 U.S.C. §365(d)(4) in effect at the time  provides in pertinent part:

> ... if the trustee does not assume or reject an unexpired lease of
> nonresidential real property under which the debtor is the lessee

model then the shopping center enterprise where there are leases as well as dealer agreements governing the relationship between the parties. The petroleum franchisor not only grants a trademark license but also controls and leases the real estate premises to be used by the franchisee and is almost always the exclusive supplier of the motor fuel for sale. *Id.*, 117 B.R. at 572. Because each lease and dealer agreement formed one controlling agreement between the parties, the court held the deadline under 11 U.S.C. § 365(d)(4) to be inapplicable and that the debtor should not be compelled to surrender the leased facilities due to its failure to assume or reject the leases within the time required by section 365(d)(4). *Id.*, 117 B.R. at 572.

Although the ruling in *Harrison* dealt with a prior version of section 365(d)(4), the Court finds the reasoning supporting the ruling continues to be applicable to the case herein and valid as to its conclusion. The differences in the current and prior versions of section 365(d)(4) mostly relate to the numbers of days which a debtor has to assume or reject a lease without obtaining a further extension, the number of extensions that could be obtained from the court, and the absence of the Court's discretion to further extend such deadline without the landlord's consent under the current version of section 365(d)(4). While the *Harrison* case involved gas station franchisees who were given special protection by Congress, the Court finds that with respect to section 365(d) they are no different than any other type of franchisee subject to the Bankruptcy Code. Rather, it is due to the integrated nature of the franchise arrangement together with the lease that makes the deadline in section 365(d)(4) inapplicable to this type of integrated

---

within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

agreement.

In considering the purpose of the Bankruptcy Code and the equities of the situation, it is reasonable and appropriate that a debtor's time to assume or reject integrated agreements that are treated as one controlling agreement to be subject to the more generous deadline for executory contracts set forth in section 365(d)(2) rather than section 365(d)(4). The purpose of chapter 11 is to allow the debtor an opportunity to effectuate a reorganization and to obtain some recovery for the benefit of all of the debtors' creditors. If the lease agreement and the franchise agreement were to be treated separately for purposes of determining the debtor's time to assume or reject and section 365(d)(2) was to be applied only to the lease agreement and section 365(d)(4) were to apply to the franchise agreement, then there would be a loss of value to a debtor's estate. If the lease agreements were to be deemed rejected by section 365(d)(4) because a debtor did not make a determination as to whether to assume or reject the entire integrated transaction, the franchise agreements would be worthless without the debtor's ability to operate a franchise unit at the leased premises specified in the franchise agreement.

To allow creditors who have a dual role of franchisor and landlord the relief stated in section 365(d)(4) would provide such creditor with a superior power to determine the course and outcome of such debtor's bankruptcy case then intended. A franchisor would be able to exert its powers as a landlord to pressure a debtor to prematurely decide whether to assume or reject the franchise agreement simply because they could refuse to extend the time for the debtor to assume or reject the lease as in the case before the Court. Should a debtor assume the lease and thereby the accompanying frachise agreement, a franchisor would have converted its unsecured claim for prepetition arrears, if any, not just under the lease but also under the franchise agreement into a

postpetition administrative claim ahead of most of the debtor's other creditors solely because of the franchisor's dual role as a landlord. This would unduly restrict a franchisee debtor's ability to effectuate a reorganization which is contrary to the purpose behind the Bankruptcy Code.

Given the power bestowed upon the franchisor/landlord and the potential affect on the outcome of the bankruptcy case and the relationship between the priority of creditors where there is an integrated transaction, the decision whether to assume a franchise agreement and the accompanying lease should be made with great consideration and with as much time as permitted under the Bankruptcy Code.  Moreover, because the assumption of one part of the transaction implicitly requires the assumption and cure of any defaults under the other part, the entire transaction should be viewed as one controlling executory agreement and as such 11 U.S.C. § 365(d)(2) is applicable herein and not 11 U.S.C. § 365(d)(4).

In the context of the cases before this Court, the Debtors are at the point where one of the secured creditors has filed a motion to convert these cases to cases under chapter 7 of the Bankruptcy Code which is returnable on March 29, 2011.  The Debtors have continued to operate at a loss on a combined basis postpetition and they have not been able to significantly reduce their expenses and it is uncertain whether they will be able to do so.  Given the timing of the motion to convert, the Debtors do not have much time to determine whether it is feasible to find a purchaser for the Debtors to assume and assign the franchise agreements and the accompanying leases or whether the cases should be converted to a chapter 7 to allow a trustee to do the same. It is unlikely that a confirmation of a plan would be achieved prior to the determination of the motion to dismiss or convert as a plan of reorganization has not yet been filed and the Debtors are seeking to extend their exclusivity period to file such a plan.

However, regardless of the outcome of the motion to convert, whether there is anything to reorganize and recover for the benefit of the bankruptcy estates depends upon whether there is anything for the Debtors to assume and assign.  Because the franchise agreements and the accompanying leases are the most valuable assets of the respective Debtors' bankruptcy estates, the application of 11 U.S.C. § 365(d)(4) to deem the Dunkin' Brands Leases and implicitly the franchise agreements rejected would benefit none of the creditors other than Dunkin' Brands.  It would also deprive the Debtors of one last opportunity to achieve a resolution on a consensual basis with its creditors and would leave nothing for the Debtors or a chapter 7 trustee to administer for the benefit of all of the Debtors' creditors.  To the extent the Debtors have been trying to negotiate some mutually acceptable resolution with their secured creditors and the unsecured creditors' committee, some additional time for the Debtors to determine whether to assume or reject the Dunkin' Brands Leases and the franchise agreements is appropriate.  Accordingly, section 365(d)(4) is inapplicable to the Dunkin' Brands Leases and the time to assume or reject these leases must be determined in conjunction with the related franchise agreements under section 365(d)(2) as each of the Dunkin' Brands Lease and the related franchise agreement constitute one controlling agreement.

The Court notes that this decision does not deal with the nonresidential real property leases entered into by some of the Debtors with third party landlords.  While those leases may or may not reference the franchise agreement pursuant to which those Debtors operate a Dunkin' Donuts and/or Baskin-Robbins store at the leased premises, those leases are not before the Court pursuant to this Motion. Therefore, this decision is limited only to the Dunkin' Brands Leases and the franchise agreements to which they relate.

<u>CONCLUSION</u>

Based upon the foregoing, the Debtors' Motion for a determination that 11 U.S.C.

§ 365(d)(4) is inapplicable to the Debtor's time to assume or reject the Dunkin' Brands Leases is

granted.  The Debtors' alternative request to allow the Debtors to assume the Dunkin' Brands

Leases without having to cure the defaults under the franchise agreements, although rendered

moot as a result of this decision, is denied.

So ordered.



Dated: **Central Islip, New York**
       **March 22, 2011**

16

**Dorothy Eisenberg**
**United States Bankruptcy Judge**